IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

| | | |
|---|---|---|
| ANTHONY HOLMES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:12-0147 |
| | ) | |
| KAREN HOGSTEN, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On January 23, 2012, Petitioner,[1] acting *pro se*, filed his Application Under 28 U.S.C. § 2241 for Writ of *Habeas Corpus* by a Person in State or Federal Custody. (Document No. 1).[2] Petitioner complains that the "FBOP system has unlawfully revoked my good time." (Id., p. 1.) Petitioner explains as follows:

---

[1] A Section 2241 petition for *habeas corpus* must be filed "in the district in which the prisoner is confined." *In re Jones*, 226 F.3d 328, 332 (4th Cir. 2000). In the instant case, Petitioner filed his Section 2241 Petition while incarcerated at FCI Beckley, located in Beaver, West Virginia. FCI Beckley lies within the Southern District of West Virginia. While Petitioner's Petition was pending before this Court, he was transferred by the BOP to FMC Lexington, which is located in the Eastern District of Kentucky. The Fourth Circuit has stated that "[j]urisdiction is determined at the time an action is filed; subsequent transfers of prisoners outside the jurisdiction in which they filed actions does not defeat personal jurisdiction." *United States v. Edwards*, 27 F.3d 564 (4th Cir. 1994)(*citing Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990)); *also see Chaney v. O'Brien*, 2007 WL 1189641 at * 1 (W.D.Va. 2007)(finding that jurisdiction over petitioner was determined at the time the action was filed, not based on petitioner's subsequent transfer to Illinois during pendency of his Section 2241 Petition); *Martin v. United States*, 2006 WL 231485 (N.D.W.Va. Jan. 31, 2006)(stating that "once properly filed . . . a prisoner's subsequent transfer does not necessarily destroy jurisdiction in the district where the prisoner was incarcerated at the time the habeas petition was filed"). The undersigned therefore finds that since Petitioner's Petition was properly filed in the Southern District of West Virginia, this Court has authority to consider Petitioner's Petition based on the merits notwithstanding his transfer to a prison outside this District.

[2] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

> While being housed in FCI Bennettsville, I received an incident report. The incident was investigated by the Lt. and was informally resolved with a sanction of extra duty. The following day, I was informed by the Lt. that her supervisor, Captain Del Ray, made her re-process the incident report after it had already been informally resolved. The Captain's blatant disregard of the policies set forth by the BOP has caused me to suffer being sanctioned twice for the same incident.

(Id.) As relief, Petitioner requests "that the incident be expunged as promised for the completion of the original sanction and the return of my good time." (Id.)

As Exhibits, Petitioner attaches the following: (1) A copy of Incident Report No. 1908092 dated August 20, 2009 (Id., p. 3.); (2) A copy of the "Documentation of Informal Resolution Attempt" dated August 20, 2009 (Id., p. 4.); (3) A copy of the "Inmate Discipline Data Chronological Disciplinary Record" dated September 28, 2009 (Id., p. 5.); (4) A copy of Petitioner's "Regional Administrative Remedy Appeal" dated October 22, 2009 (Id., p. 6.); (5) A copy of the Regional Director's Response dated December 9, 2009 (Id., p. 7.); (6) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated January 5, 2010 (Id., p. 8.); (7) A copy of Administrator Harrell Watts' Response dated May 17, 2010 (Id., p. 9.); and (8) A copy of Petitioner's "Inmate Request to Staff" dated December 25, 2009 (Id., p. 10.).

On April 27, 2012, the undersigned ordered that Respondent file an Answer to the allegations contained in the Petitioner's Application and show cause, if any, why the Writ of *Habeas Corpus* sought by the Petitioner in this case should not be granted. (Document No. 5.)

On May 25, 2012, Respondent filed his Response to the Order to Show Cause. (Document No. 7.) Respondent argues that Petitioner's Petition should be dismissed because "Petitioner fails to state a claim of double jeopardy." (Id., pp. 7 - 9.) As Exhibits, Respondent attaches the following: (1) The Declaration of Sarah Lilly (Document No. 7-1, pp. 2 - 3.); (2) A copy of Incident Report No. 1908092 dated August 20, 2009 (Id., pp. 5 - 7.); (3) A copy of the "Notice of Discipline Hearing

2

Before the DHO" dated August 24, 2009 (Id., p. 9.); (4) A copy of the "Inmate Rights at Discipline Hearing" dated August 24, 2009 (Id., pp. 11 - 12.); (5) A copy of the "Discipline Hearing Officer Report" dated September 23, 2009 (Id., pp. 14 - 16.); (6) A copy of the "Amended Discipline Hearing Officer Report" dated November 23, 2009 (Id., pp. 18 - 20.); (7) A copy of Downs v. Gill, 2011 WL 1457757 (D.Md. April 15, 2011)(unpublished) (Document No. 7-2, pp. 2 - 6.); and (8) A copy of Garland v. Barfield, 2009 WL 22283 (N.D.Fl. Jan. 2, 2009)(unpublished) (Id., pp. 7 - 9.).

Petitioner filed his Reply on June 27, 2012. (Document No. 8.) Petitioner argues that "I have shown through a sworn statement by the investigating officer that this issue was resolved informally and sanctioned with extra duty." (Id., p. 1.) Petitioner contends that BOP policy[3] allows "the investigating officer, usually a Lt., to resolve an incident informally with the exception of greatest or high severity level acts, 100 or 200 series, incidents." (Id.)

## DISCUSSION

In considering an inmate's application for *habeas* relief under 28 U.S.C. § 2241, the Court must consider whether the Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Rose v. Hodges, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975). Although the Fifth Amendment of the United States Constitution prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law," the range of protected liberty interests for defendants convicted and confined in prison are significantly reduced for their period of incarceration. See U.S. Const. Amend. XIV, § 1; Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). The fact of conviction implies the defendant's transfer of his liberty to prison officials, who in their broad discretion, administer his sentence. Gaston, 946 F.2d

---

[3] The failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation.

3

at 343. Nevertheless, "confinement to prison does not strip a prisoner of *all* liberty interests." Gaston v. Taylor, 946 F.2d at 343 (emphasis added).

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of entitlement. See Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979)(quoting Board of Regents v. Roth, 408 U.S. at 577, 92 S.Ct. 2709). In Gaston v. Taylor, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away, expressly or by implication, in the original sentence to confinement." Id. at 343. Such interests, however,

> will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995)(citations omitted). Consequently, in order to establish that a deprivation of his due process rights has occurred, Petitioner must identify a liberty interest which is protected by the Due Process Clause of the United States Constitution. Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding that an inmate cannot be deprived of a protected liberty interest in good-time credits without procedural due process).

When a disciplinary sanction impacts the duration of a federal inmate's sentence, a protected liberty interest in the inmate's release from confinement is implicated, and minimal procedural guarantees are recognized. Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553

(1985). The Supreme Court stated what procedure is required at a minimum in Wolff, supra. An inmate subject to administrative disciplinary sanctions impacting the duration of his sentence is entitled (1) to receive advance notice of charges no less than 24 hours before the disciplinary hearing, (2) to present evidence and witnesses in his defense as long as it does not jeopardize institutional safety or correctional goals, and (3) to receive a written statement of the evidence relied upon and the reasons for the disciplinary action. Id., 418 U.S. at 563 - 569, 94 S.Ct. at 2978 - 2981. BOP regulations are clearly written in view of the constitutionally required minimum, but the failure of prison officials to follow their own internal policies, procedures or regulations alone is insufficient to make out a due process violation when a protected liberty interest is evident as long as the constitutionally required minimum is met. See Myers v. Klevenhager, 97 F.3d 91, 94 (5th Cir 1996); Giovanni v. Lynn, 48 F.3d 908, 913 (5th Cir. 1995), cert. denied, 516 U.S. 860, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). The undersigned notes additionally that the Supreme Court has indicated that prison regulations are not designed to confer rights on or benefits to inmates. Rather, they are primarily designed to guide correctional officials in the administration of prisons. Sandin v. Conner, 515 U.S. 472, 481- 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

    Having thoroughly examined the record in this case, the undersigned finds no indication of error of constitutional magnitude in the disciplinary proceedings. It is clearly evident that in charging and considering Petitioner's violation of Offense Codes 307, 312, and 404, prison officials adequately adhered to the policies and procedures as prescribed in 28 C.F.R. § 541 and the Bureau of Prisons' Program Statement 5270.07. It is undisputed that Petitioner received all of the minimum due process safeguards set forth in Wolff. Petitioner received all documents pertinent to the charges against him, was advised of his rights, and had ample opportunity to present a defense to those charges. The

5

undersigned notes that Petitioner received written notice of the charges on August 20, 2009,[4] and was provided a "Notice of Discipline Hearing Before the DHO" on August 24, 2009. (Document No. 7-1, pp. 5 - 9.) On the "Notice of Discipline Hearing Before the DHO," Petitioner indicated that he did not wish to have a staff representative or wish to call witnesses. (Id., p. 9.) The DHO hearing was held on September 16, 2009, and the DHO found that Petitioner violated Offense Codes 307 and 312.[5] (Id. pp. 14 - 20.) The DHO imposed the following sanctions: (1) Disallowance

---

[4] The Incident Report dated August 20, 2009, described the incident as follows (Document No. 7-1, p. 5.):

> On August 20, 2009, at approximately 11:25 a.m., while standing out in front of unit A2, last call for main line was announced. Inmate Holmes, A., 09698-007, came rushing out of the unit with his shirt untucked, pants unfastened, and boots untied. I told him to stop and get dressed. He kept walking up the sidewalk while tucking in his shirt. I again told him to stop walking and get dressed. He stated while continuing to walk and tuck his shirt in his pants, "it's the last call I am trying to go eat." This time I told him to step back into the Sallyport and get dressed properly. He stated, "man this sh*t is f**cked up," as he went back to the Sallyport to get dressed properly. At approximately 12:05 PM, while standing in front of A2 entrance door watching Case Manager T. Thomas, who was standing off to the side of the entrance door talking with 5 or 6 inmates, no more outbound traffic was announced. Inmate Holmes attempted to leave the unit. I told him, you missed it. You'll have to wait for the next move. He stated, I need to holla at you when you get inside. I asked him what do you need to talk with me about? He stated, for future reference don't you ever disrespect me again. I told him, "step inside, I ain't trying to hear that non-sense." He said, "I don't care what you are trying to hear. For future reference you better not disrespect me again, or else." I asked, "or else what? Are you threatening me?" Ms. Thomas intervened by reminding him that he had a transfer pending, and ordered him to step back inside the unit. Inmate Holmes replied, "I got 35 years. I don't give a d**n about a transfer." Ms. Thomas had to tell him three times to go inside the unit, and I had to tell him again to go inside the unit. This incident took place in front of several inmates standing outside the unit waiting to speak with Ms. Thomas.

[5] In the "Specific Evidence Relied on to Support Findings," the DHO stated in pertinent part as follows: (Document No. 7-1, p. 19.):

> Based on the reporting officer's written statement and eyewitness account of the incident, the electronic message from a staff member witnessing the incident, and your express animosity towards this staff member for disrespecting you, the DHO

6

of 13 days Good Conduct Time; (2) 30 days Disciplinary Segregation suspended pending 180 days clear conduct; and (3) Loss of Commissary Privileges for 180 days.[6] (Id., pp. 19 - 20.) Based on the foregoing, the undersigned finds no violation of Petitioner's due process rights.

Petitioner further contends that the BOP violated his right against double jeopardy by punishing him twice for the same offense. Petitioner explains that after he received the Incident Report, the Lieutenant informally ordered him to complete extra duty to resolve that Incident Report. Petitioner asserts that even though he completed the extra duty, the Captain ordered the Lieutenant to process the Incident Report. Petitioner complains that the DHO found Petitioner guilty of the

---

finds you did commit the prohibited acts of Refusing to Obey an Order and Insolence Toward a Staff Member, codes 307/312. The charge for Using Abusive or Obscene Language, code 404, was considered repetitive and stricken from your record.

[6] The DHO stated the "Reason for Sanction or Action Taken" as follows (Document No. 7-1, pp. 19 - 20.):

Refusing to Obey an Order and Insolence Toward a Staff Member will not be tolerated in the correctional environment. It demonstrates a disrespect to staff's authority and if allowed to continue uncorrected, tends to have other inmates participate in the same type of behavior. The sanction of disallowance of 13 days good conduct time is imposed which is compliant with policy for an inmate sentenced under the DC SRAA guidelines and should be constant reminder that your involvement in misconduct will prolong your incarceration.

The sanction of 180 days commissary restriction was imposed to impress upon you the seriousness of your behavior and the importance of following directives issued by staff. The sanction of 30 days disciplinary segregation is suspended pending 180 days clear conduct in an attempt to deter this type of behavior from recurring.

The sanctions were imposed to hold you accountable for your behavior in this instance, and will hopefully deter you from future conduct of this sort. If not, I caution you that the Bureau of Prisons believes in, and practices, progressive discipline and repetitive behavior of this sort will likely result in harsher consequences.

7

charges and revoked 13 days of good time credit. Petitioner, therefore, contends that he was subjected to double jeopardy. The Fifth Amendment provides, in pertinent part, that "[n]o person shall . . . be subject for the same offense to be put twice in jeopardy of life or limb." The Fifth Amendment, however, applies only to criminal proceedings. Prison disciplinary proceedings are civil in nature and do not implicate the Fifth Amendment. United States v. Devaughn, 32 Fed.Appx. 60, 61 (4th Cir. 2002)("prison disciplinary sanctions do not preclude subsequent criminal prosecution for the same conduct under the Double Jeopardy Clause of the Fifth Amendment because Congress intended disciplinary proceedings to be civil in nature"), cert. denied, 537 U.S. 962, 123 S.Ct. 389, 154 L.Ed.2d 316 (2002); also see Anderson v. Padula, 2006 WL 1075003, * 4 (D.S.C. April 19, 2006)(finding that the Double Jeopardy Clause was not implicated when the petitioner was sanctioned twice for one prison disciplinary charge, first through an informal resolution and then through a disciplinary hearing regarding the same charged); Edwards v. Braxton, 2005 WL 1388746, * 4 (W.D.Va. June 10, 2005)("[T]he double jeopardy claim does not apply to disciplinary hearings."). Accordingly, the undersigned finds that Petitioner's claim that prison officials violated the Double Jeopardy Clause is without merit.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DISMISS** Petitioner's Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody (Document No. 1.) and **REMOVE** this matter from the Court's docket.

Petitioner is notified that this Proposed Findings and Recommendation is hereby **FILED**, and

a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, Petitioner shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of these Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

Date: April 5, 2013.

R. Clarke VanDervort
United States Magistrate Judge